UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JULIO SANTOS, JR ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION |
| ) | NO. 10-40166-TSH |
| MICHAEL J. ASTRUE, ) | |
| As Commissioner ) | |
| Social Security Administration. ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OF DECISION AND ORDER ON DEFENDANT'S
MOTION TO AFFIRM DECISION OF THE COMMISSIONER**
**March 30, 2012**

**Hillman, M.J.**

### Nature of the Proceeding

This is an action for judicial review of a final decision by the Commissioner of the Social Security Administration ("Commissioner") regarding an individual's entitlement to Social Security Income ("SSI"). The Commissioner moves for this Court to enter an order affirming the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). (Docket Nos. 12). The Plaintiff opposed the motion and filed a response asking that the Court overturn the Commissioner's claim. (Docket No. 19).

The parties have consented to this court's jurisdiction (Docket No. 7). *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. For the following reasons, the Commissioner's motion is denied, and the case is remanded, consistent with the terms set forth in this Memorandum.

## Nature of the Case

This is an appeal from the final decision by the Commissioner of the Social Security Administration denying Plaintiff, David Scott Fiske's ("Fiske" or "Plaintiff") application for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits. The Plaintiff contends that the Administrative Law Judge ("ALJ") did not properly determine whether Plaintiff's respiratory problems met a Listing Impairment; did not properly assess his credibility; did not properly assess the medical opinions in the administrative record; and that the ALJ did not properly rely on the testimony of the Vocational Expert ("VE").

## Procedural History

Plaintiff filed applications for a period of disability, DIB, and SSI payments on July 17, 2007, alleging that he had been unable to work since July 1, 2002, due to hearing problems, fractured fingers in the right hand, headaches, vision problems, a head injury incurred while in prison, a learning disability, depression, lack of memory, and suicidal thoughts. (*Transcript* at p. 232-238, *hereinafter* "Tr.").[1]. Plaintiff's applications were denied initially and by a Federal Reviewing Official on reconsideration, and Plaintiff requested a hearing before an ALJ. (Tr. 127-139, 140). After hearing and consideration of the testimony of Plaintiff, his attorney, Plaintiff's mother, and a vocational expert, the ALJ determined that Plaintiff was not entitled to disability because he retained the functional capacity to perform other work that exists in significant numbers in the national economy. (Tr. 16-26, 31-103). The Decision Review Board selected Plaintiff's claim for review, but because the Board failed to act within 90 days, however, the ALJ's decision became final and subject to judicial review. (Tr. 1-3).

---

[1] A transcript of the official record has been filed under seal with the court, (Docket No. 11)(*Tr.*).

## **Background**[2]

As the parties are familiar with the facts of the case and all of the medical evidence is contained in the transcript, the Court will briefly outline the basic facts here, then address the evidence pertinent to Plaintiff's arguments below. Plaintiff was born in 1974 in Puerto Rico and later moved to the United States. He began school in Puerto Rico and completed the twelfth grade in Fitchburg schools; he received special education services throughout his schooling. He has work experience working at the grill in a fast food restaurant, as a bagger in a grocery store and worked for one month in a manufacturing job, when he was arrested and charged with a sex offense. He was incarcerated from January 2001 through June 2007. The Plaintiff received some English as a Second Language training while incarcerated. His family, including both parents, live locally and he has two children by two different women, a son and a daughter in their young teens; he has contact with his son. The Plaintiff currently lives with his aunt. He was 27 years old at the onset of his alleged disability.

*The ALJ's Findings*

The ALJ made the following findings: at step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 1, 2002, the date of onset of his alleged disability. (Tr. 18). At step two, the ALJ found that Plaintiff had the severe impairments of post traumatic stress disorder, a learning disability, a left shoulder injury, and a hearing impairment. (Tr. 18). At step three, the ALJ held that Plaintiff's impairments did not meet or medically equal any of the listed impairments. (Tr. 19-20). At step four, the ALJ found that Plaintiff retained the functional capacity to perform medium work,[1] but he was limited to simple unskilled work that

---

[2] The Court will refrain from a lengthy recitation of the Plaintiff's medical history, which was covered in the parties' memoranda and set forth thoroughly in the ALJ's decision and in the transcript. Further, the Plaintiff's arguments concern only his mental impairments and therefore, discussion will be limited to the evidence and facts which are pertinent to the Plaintiff's arguments.

allowed for only occasional contact with co-workers and the general public and did not require more than occasional close supervision. (Tr. 20). Plaintiff was restricted to occasional overhead reaching on the left, and Plaintiff's hearing impairment might require him to occasionally engage in face-to-face conversations in order to hear well. (Tr. 20). In light of this residual functional capacity and based on the testimony of a vocational expert, the ALJ found that Plaintiff could not return to his past relevant work. (Tr. 24). At step five, the ALJ, again in reliance on the testimony of a vocational expert, decided that Plaintiff was not disabled because he retained the capacity to do "Medium" work involves lifting no more than fifty pounds at a time with frequent lifting or carrying of objects weighing up to twenty-five pounds. 20 C.F.R. §§ 404.1567(c), 416.967(c). If someone can do medium work, he or she is also deemed capable of sedentary and light work. Id.3 perform other work that exists in significant numbers in the national economy, including such jobs as janitor/cleaner, laundry worker, and dishwasher. (Tr. 24-25).

In her decision, the ALJ noted Plaintiff's various physical ailments, including hearing problems, a head injury caused by other inmates while serving time, a left hand fracture and persistant shoulder pain. (Tr. 21) In terms of mental impairments, Plaintiff shows a history of situational depression and anxiety, anger issues, chronic sleep disturbance, assaultive behavior when confronted and suicidal thinking. *Id.*

*Dr. Nowell's Consultative Examination*

Plaintiff underwent a consultative psychological evaluation by David Nowell, Ph.D., on September 8, 2008. (Tr. 492-500). Plaintiff informed Dr. Nowell that he had not worked for about seven years, and that he was released from jail the previous summer. He was living with his aunt and he traveled by bicycle because he lost his driver's license. Plaintiff could shop independently and he had few friends, stating that he did not feel comfortable around others. As

4

to daily activities, Plaintiff stated that he would wake up, pace around the house for thirty minutes to an hour, and often return to bed.

The Plaintiff complained of irritability and difficulty sleeping, concentration and memory, as well as visual and auditory hallucinations. Dr. Nowell opined that the Plaintiff showed fair to good recall when discussing personal history, was well oriented, but that he had an odd presentation and some difficulty with testing.

On mental status examination, Dr. Nowell remarked that Plaintiff arrived early for his appointment, locked his bicycle out front, and entered with a helmet and backpack. (Tr. 495). Plaintiff had a reasonable command of English, though he had a speech impediment that was consistent with hearing difficulties. Dr. Nowell administered the Test of Nonverbal Intelligence ("TONI-II"), upon which Plaintiff earned a score of 90, which was at the low end of the average range. Plaintiff complained of forgetfulness and distractibility, and reported having nightmares about dead people and seeing people killed.

Dr. Nowell diagnosed dissociative disorder not otherwise specified, ruled out post traumatic stress disorder, learning disability not otherwise specified, rule out cognitive disorder not otherwise specified, depression not otherwise specified, and psychotic disorder not otherwise specified. Dr. Nowell concluded that Plaintiff was trainable, but he faced challenges in terms of his legal history, English as a second language, a learning disability that was likely language-based, and a mood disorder. Plaintiff's attention and concentration were rated as moderately attenuated, but his basic social skills were intact. Dr. Nowell concluded that "if we can get over the background check 'hump,' and conceptualize this gentleman's vocational capacity without those restrictions, we have a gentleman who appears capable of new learning." (Tr. 498).

*Dr. Davila's Consultative Examination*

On January 27, 2010, Carlos Davila, Ed.D., performed a consultative examination of Plaintiff. (Tr. 524-527). Plaintiff stated that he suffered from depression and anxiety since childhood, and that he also suffered from learning disabilities. (Tr. 524). He was placed in a special education program throughout his schooling, and he graduated from high school. Plaintiff informed that he was being followed by a psychiatrist, who prescribed medications, and a psychotherapist, and that he felt better with this treatment, though he still suffered from depression and anxiety. (Tr. 524-525). Dr. Davila recorded that Plaintiff spoke English only throughout the interview, even when given the choice to communicate in English or Spanish. (Tr. 525). Plaintiff was able to manage routine daily activities of personal hygiene independently, he appeared capable of managing routine activities of daily living, and he appeared capable of managing his own finances. (Tr. 525).

The Plaintiff was described as well groomed, neatly dressed, very friendly and age-appropriate looking, and was oriented on all spheres. Speech and thought were logical and coherent, giving the impression of intellectual functions well within the normal range of intelligence. Memory functions appeared unimpaired, but Plaintiff noted that he was forgetful. Plaintiff denied experiencing auditory or visual hallucinations. Dr. Davila administered the Wechsler Adult Intelligence Scale, Third Edition (WAISIII), and Plaintiff earned a performance IQ of 73, a verbal IQ of 63, and a full scale IQ of 64. (Tr. 526). Dr. Davila remarked that these scored placed Plaintiff's level of functioning in the mentally retarded to borderline range of intelligence, but he added that these scores appeared to substantially underestimate Plaintiff's true level of functioning. (Tr. 23, 526) Dr. Davila reasoned that the scatter of subtest scores was

strong evidence of much higher functioning, and it was his impression that Plaintiff's intellectual functioning was well within the average range. *Id*.

Dr. Davila diagnosed major depressive disorder in full remission and a learning disorder not otherwise specified. He concluded that Plaintiff's innate intellectual functioning was well within the average range of intelligence, though there was evidence of a learning disorder.

## Discussion

I.  *Court's Review of Commissioner's Decision*

Under § 205(g) of the Social Security Act, this Court may affirm, modify, or reverse the Commissioner's decision, with or without remanding the case for rehearing. 42 U.S.C. § 405(g). The Administrative Law Judge's finding on any fact shall be conclusive if it is supported by substantial evidence, and must be upheld "if a reasonable mind, reviewing the evidence as a whole in the record, could accept it as adequate to support his conclusion," even if the record could justify a different conclusion. *Rodriguez v. Sec'y of Health and Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981); see also *Evangelista v. Sec'y Health and Human Servs.*, 826 F.2d 136, 144 (1st Cir. 1987). In applying the "substantial evidence" standard, the Court must bear in mind that it is the province of the ALJ, not the court, to find facts, decide issues of credibility, draw inferences from the record, and resolve conflicts of evidence. *Irlanda Ortiz v. Sec'y of Health and Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991). Reversal is warranted only if the ALJ committed a legal or factual error in evaluating Plaintiff's claim, or if the record contains no "evidence rationally adequate...to justify the conclusions" of the ALJ. *Roman-Roman v. Commissioner of Social Security*, 114 Fed. App'x. 410, 411 (1st Cir. 2004); *see also Manso-Pizarro v. Sec'y of Health and Human Servs,* 76 F. 3d. 15 (1st Cir. 1996).

II.     *Standard for Entitlement to Disability Insurance Benefits*

In order to qualify for disability insurance benefits, a claimant must demonstrate that he or she is disabled within the meaning of the Social Security Act. The Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment(s) must be severe enough to prevent the claimant from performing not only her past work, but any substantial gainful work existing in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1560(c)(1).

An applicant's impairment is evaluated under a five-step analysis set forth in the regulations promulgated under the statute. 20 C.F.R. § 404.1520. The First Circuit has described the analytical sequence as follows:

> First, is the claimant currently employed? If he is, the claimant is automatically considered not disabled.
>
> Second, does the claimant have a 'severe impairment' ... mean[ing] an impairment 'which significantly limits his or her physical or mental capacity to perform basic work-related functions[?]' If the claimant does not have an impairment of at least this degree of severity, he is automatically considered not disabled.
>
> Third, does the claimant have an impairment equivalent to a specific list of impairments contained in Appendix 1 [of the Social Security regulations]? If the claimant has an impairment of so serious a degree of severity, the claimant is automatically found disabled .... If, however, his ability to perform basic work-related functions is impaired significantly (test 2) but there is no 'Appendix 1' impairment (test 3), the [ALJ] goes on to ask the fourth question:
>
> Fourth, does the claimant's impairment prevent him from performing work of the sort he has done in the past? If not, he is not disabled. If so, the agency asks the fifth question.
>
> Fifth, does the claimant's impairment prevent him from performing other work of the sort found in the economy? If so, he is disabled; if not, he is not disabled.

*Goodermote,* 690 F.2d at 6–7.

The burden of proof is on the applicant as to the first four steps of the analysis. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the [ALJ] may require."). At the fifth step of the analysis, the burden shifts to the Commissioner to show that the claimant is capable of performing jobs available in the national economy. *Freeman v. Barnhart,* 274 F.3d 606, 608 (1st Cir. 2001). In making that determination, the ALJ must assess the claimant's RFC in combination with vocational factors, including the claimant's age, education, and work experience. 20 C.F.R. § 404.1560(c).

III.    *Whether the Commissioner's Decision Should be Affirmed*

Plaintiff argues that that the ALJ improperly found that his impairments did not meet the requirements of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; Listing 12.05(C). Plaintiff further asserts that the ALJ erred because she did not discuss the vocational expert's responses to each of the hypothetical questions posed, and further, she did not find Plaintiff disabled based on the expert's response to a hypothetical posed by Plaintiff's representative. In response, the Commissioner asserts that the record supports the ALJ's findings and the decision is supported by substantial evidence. The Court's standard of review is not whether the record evidence could support a particular finding, but whether substantial evidence exists to support the ALJ's findings. *See Roman-Roman v. Commissioner of Social Security,* 114 Fed. App'x. 410, 411 (1st Cir. 2004). With this standard at the forefront, the Court will review the ALJ's findings.

*Whether Plaintiff's Impairments Meet the Listing of 12.05(C)*

The plaintiff argues that the administrative law judge erred in failing to apply relevant principles in assessing whether the plaintiff's impairments met Listing 12.05C, for mental

retardation. The Commissioner argues that the ALJ properly reviewed the medical evidence and that the Plaintiff's impairments do not meet the requirements of Listing 12.05(C).

At the third step of the sequential evaluation process used in determining whether an individual is disabled, a finding of disability will be made if the claimant has an impairment or combination of impairments that either meets or equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d). A claimant for disability benefits bears the burden of proving his disability. *Freeman v. Barnhart*, 274 F.3d 606, 608 (1st Cir. 2001). It is not enough that the claimant's impairment bears the same diagnosis of a listed impairment; it must also have the findings shown in the listing of that impairment. 20 C.F.R. §§ 404.1525(d), 416.925(d). In order for a claimant to prove that his impairment meets a listing, he must meet every element of the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). To equal a listing, the claimant's medical findings must be "at least equal in severity and duration to the listed findings." 20 C.F.R. §§ 404.1526(a), 416.926(a). Determinations of equivalence must be based on medical evidence only and must be supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. §§ 404.1526(b), 416.926(b).

Section 12.05 of the listings defines mental retardation as "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., . . . before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. In order to be found disabled under part (C) of that section, a claimant must prove that his impairments meet that definition of mental retardation set forth above, and that he has: "[a] valid verbal, performance, or full scale IQ of 60 through 70" and "a physical or other mental impairment imposing additional and significant work-related limitation of function." Listing

12.05(C). A finding of impairment as mentally retarded under the above definition automatically qualifies the applicant as disabled. *See Nieves v. Secretary of Health and Human Services,* 775 F.2d 12, 13 (1st Cir. 1985).

Amendments to the mental health listings regulations in 2000 clarified that a claimant will meet the listing for mental retardation only if the "[claimant's] impairment satisfies the diagnostic description in the introductory paragraph [to Listing 12.05] and any one of the four sets of criteria [set forth in 12.05A through D]" (emphasis added). 20 C.F.R. Pt. 404, Subpt. P, App. 1 §12.00A, as amended by 65 Fed. Reg. 50746, 50776 (August 21, 2000). A claimant must show that he meets the diagnostic criteria for mental retardation in addition to the other requirements of Listing 12.05(C), that their IQ score falls between 60-70, and that there exists an additional limiting mental or physical impairment.[3]

Although the Plaintiff had an full scale IQ score of 64, and the ALJ had earlier found that the Plaintiff had several severe impairments[4], post traumatic stress disorder, learning disability, left shoulder injury, and hearing impairment, the ALJ found that he did not meet or equal the requirements of Listing 12.05(c), concluding that "the preponderance of the record medical evidence shows that the claimant's intellectual functioning does not fall in the mentally retarded range." (Tr. 20). The Commissioner contends that the Plaintiff cannot meet or equal Listing

---

[3] While the Commissioner has promulgated the revised regulatory construction, the matter has not been squarely addressed by the First Circuit Court of Appeals. Within the Circuit, a trilogy of recent cases in Maine have examined the issue and followed the Commisisoner's recommendation with regard to the listing, i.e. that in order to meet the Listing for 12.05, the claimant must also meet the diagnostic description for mental retardation found in the introductory paragraph, by demonstrating that mental retardation was manifest before age 22. *See Libby v. Astrue*, 2011 WL 2940738, *5 (D.Me. July 19, 2011); *Richardson v. Astrue*, 2011 WL 3273140, *6 (D.Me. July 29, 2011); Hewes v. Astrue, 2011 WL 4501050 , *3 (D.Me. Sept. 27, 2011). The issue also arose in the case of *Morales v. Commissioner of Social Security*, 2 Fed. App'x. 34, 37 (1st Cir. 2001), where "there [was] simply no evidence in the record that claimant had any deficits in adaptive behavior initially manifested … before age 22"). *Cf. Grenham v. Astrue*, 2009 WL 1209026, *6 (D.Mass. 2009) (finding that record contains evidence that may support diagnostic description in listing impairment 12.05)

[4] A finding that a claimant has a 'severe impairment' under 20 C.F.R. § 404.1520(c) or 20 C.F.R. 404.920(c), satisfies the requirement under Listing 12.05(c) that the claimant show "a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Nieves v. Secretary of Health and Human Services,* 775 F.2d 12, 14 n. 7 (1st Cir.1985).

12.05(C) because he does not satisfy all of the requirements of the listing. The text of Listing 12.05(C) requires an IQ score to be valid and here, the ALJ found that Plaintiff's IQ scores were invalid and chose to place more weight on the opinions of the examiners. I agree and find that there is substantial evidence on the record to support that the requirements for the Listing wer not met.

The Plaintiff argues in his brief (Docket No. 11, at 4) that the ALJ gave no reasons to support her conclusion that the testing results were not valid, but that she "simply relies on the findings of Dr. Nowell (Tr. 22, 492-498) and Dr. Davila (Tr. 23, 524-527). This is not a case where the ALJ has substituted her judgment for a valid medical opinion, see *Rosado v. Secretary of Health and Human Services*, 807 F.2d 292, 293-94 (1st Cir.1986) (an ALJ may not substitute his own judgment for an uncontroverted medical opinion); *Rose v. Shalala*, 34 F.3d 13, 18 (1st Cir.1994), but where she properly weighed the medical evidence on the record. The ALJ likely relied on language in the introductory section to the Disability Listings for Mental Disorders. That language provides that "since the results of intelligence tests are only part of the overall assessment, the narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00(D)(6)(a). In discrediting the IQ scores, the ALJ relied on the Dr. Davila's opinion that the Plaintiff's IQ scores "substantially underestimate this patient's true level of functions, and that "there was a strong evidence in the scatter of subtest scores to indicate a higher level of functioning." (Tr. 23, 524-527).

The ALJ, by relying on the record evidence, including Plaintiff's psychotherapy session notes (Tr. 22), and the reports of Drs. Nowell and Davila (Tr. 22-24) in particular, concluded that there was no evidence that the Plaintiff suffered from mental retardation or severe cognitive

deficit. (Tr. 23). The ALJ noted significantly that, "As for the opinion evidence, no treating or examining physician has suggested that the claimant has any physical or mental impairment which prevents him from working." *Id*. The lack of a formal diagnosis should not automatically preclude a plaintiff from meeting the requirements of the Listing, however, it is a factor which may be considered, along with the other evidence, in deciding whether the Plaintiff has satisfied his burden.

The Plaintiff did not argue that he satisfied the diagnostic description of mental retardation included in the introductory paragraph to Listing 12.05. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. and it is not specifically culled out by the ALJ in her decision. There is substantial evidence to support that this requirement has not been met. Although Plaintiff testified that he was enrolled in special education classes throughout his schooling, the record shows that Plaintiff was diagnosed with a learning disorder and not mental retardation. Moreover, adaptive functions, as defined in 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(1), include "cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your personal grooming and hygiene, using telephones and directories, and using a post office." In this case, the Plaintiff reported that he was able to care for his personal grooming and hygiene, cooked his own meals on a daily basis, he did laundry, he used public transportation, he shopped, he paid bills and managed a bank account, and he talked on the telephone every day. Furthermore, he rode his bicycle around town as a primary mode of transportation and went fishing. Plaintiff's ability to perform these activities is substantial evidence that he did not have the requisite deficits in adaptive functioning in order to satisfy Listing 12.05(C).

Finally, in a one sentence argument, the Plaintiff challenges the ALJ's finding that he did not meet listing 12.05, arguing that since neither the Plaintiff nor his counsel had the opportunity to cross-examine Dr. Davila or to rebut the report, Plaintiff's procedural due process rights were violated. Social security hearings are subject to procedural due process considerations. *Eze v. Gonzales*, 478 F3d 46, 47 (1st Cir. 2007) ("[N]otice and an opportunity to be heard together comprise an essential principle of due process.") First, as noted in *Lindholm v. Astrue*, Civ. Act. No. 10-11935-DJC, 2012 WL 527856, at *10, n.10 (D.Mass. Feb. 16, 2012), "an ALJ is not restricted to the record at the time of the hearing," *citing* 20 C.F.R. § 405.360 (noting that "[s]ubject to § 405.401(c), the official record closes once the [ALJ] issues his or her decision regardless of whether it becomes our final decision"). "If the ALJ obtains evidence after the hearing from a source other than the claimant, the ALJ generally must provide the claimant an opportunity to examine the evidence before entering it into the record as an exhibit." SSA Office of Disability Adjudication & Review, Hearings, Appeals & Litigation Law Manual ("HALLEX") § I–2–5–1(B). Here, the Plaintiff's counsel does not argue nor is it shown on the record that he requested an opportunity to question Dr. Davila about his report. (Tr.7-8). I find that because the Plaintiff was given the evidence, had the opportunity to examine it and elected not to do so, there was no due process violation. *See Richardson v. Perales*, 402 U.S. 389, 4040405 (1971) (holding that procedural due process had been afforded in case in which Social Security applicant claimed lack of opportunity to cross-examine reporting physicians but had not taken advantage of opportunity to request that they be subpoenaed).

*Responses to Hypotheticals*

Plaintiff argues that the ALJ failed to discuss the VE's responses to each of the hypotheticals. The Commissioner contends that no error exists because the ALJ did not

ultimately adopt the limitations included in those hypotheticals. The Court concludes that the Commissioner has the better argument.

After determining that a claimant is unable to return to her past work, the burden is on the Commissioner to prove that other jobs exist which the claimant could do. *Rosado v. Sec'y of Health & Human Servs.,* 807 F.2d 292, 294 (1st Cir.1986). When addressing that burden, an administrative law judge often relies on the testimony of a vocational expert to establish the number of jobs existing in the national economy which a person having the same residual functional capacity of the claimant could do. However, "in order for a vocational expert's answer to a hypothetical question to be relevant, the inputs into that hypothetical must correspond to conclusions that are supported by the outputs from the medical authorities." *Arocho v. Sec'y of Health and Human Servs.*, 670 F.2d 374, 375 (1st Cir. 1982). If an administrative law judge poses a hypothetical to a vocational expert that does not clearly encompass the same limitations a claimant suffers, then the vocational expert's response will assuredly be irrelevant and may not be relied on by the administrative law judge.

The first hypothetical at issue presented to the VE by the ALJ in the instant case is summarized as follows:

1. An individual who has a medium exertional capacity, and who can sit, stand and walk a maximum of eight (8) hours per day;

2. No postural limitations;

3. No environmental limitations;

4. No more than occasional overhead reaching with left arm;

5. Due to the side effects of medication and psychological issues, will be off task occasionally 20 percent of the day;

6. Requires occasional close supervision;

7. Limited to occasional contact with co-workers;

8. Hearing impairment, but with hearing aids and occasional face to face converstaions can discern 100 percent in verbal communications.

(Tr. 91-98.)

The VE responded that with these restrictions, the Plaintiff could not perform his past relevant work, but could perform the jobs of janitor/cleaner, laundry worker, and dishwasher, which exists in significant numbers in the national economy. *Id*. at 99. The ALJ then amended the hypothetical to include a further restriction limiting the Plaintiff to only incidental exposure to co-workers and supervisors, to which the VE replied that the Plaintiff could perform the duties of a cleaner, a janitor or a laundry worker and "simply work second shift." *Id*. at 99. Counsel for the Plaintiff then next asked the VE to assume a claimant whose hearing loss requires the use of hearing aids in both ears and whose medical conditions require him to be absent from work an average of four days or nights per month. *Id.* 101. The VE replied in the negative when asked if such restrictions would be acceptable limitations to the aforementioned jobs, but placed emphasis on the factor of missing four shifts per month. *Id*.

Plaintiff alleges that the ALJ should have found him disabled based on the VE's response to the hypothetical that included the restriction of being absent from work four days per month. (Tr. 101). Plaintiff contends that the absences would be the combined result of the side effects of his medications and his use of a bicycle for transportation, which may prove problematic during the winter. This additional restriction on the hypothetical presented to the VE is not supported by the record and the Court finds it to be unconvincing. The ALJ was not required to accept or discuss vocational testimony based on other limitations not found to be supported by substantial

evidence. *See Arocho at* 375; *see also Hutchins v. Astrue*, Civ. Act. No. 09-10900-NG, 2010 WL 3895183, at *6 (D. Mass. Sept. 30, 2010) (holding that ALJ could rely on vocational expert's response to first hypothetical where restrictions set forth in subsequent hypothetical were not supported by substantial evidence).

Further, Plaintiff'mode of transportation to a job is not relevant to a determination of disability. Under the statute, a person is "disabled" if:

his physical or mental impairment or impairments are of such a severity that he is not only unable to do his previous work but cannot ... engage in any other kind of substantial gainful work which exists in the national economy, *regardless of whether such work exists in the immediate area in which he lives ....*

42 U.S.C. § 423(d)(2)(A) (emphasis added). A disabled plaintiff can "choose either to commute the distance to his job or he can move closer and avoid the expense and inconvenience." *See Aho v. Astrue*, 2011 WL 3511518, *13 (D.Mass.), citing *Lopez-Diaz v. Sec'y of Health, Education, & Welfare,* 585 F. 2d 1137, 1140 (1st Cir. 1978). There is an exception in the First Circuit, however, where "the claimant asserts that his locomotive disabilities render it impossible, or extremely difficult, for him to physically move his body from home to work," the distance from a claimant's residence to the jobs cited by the vocational expert should be considered. *Id.; see also Rasmussen-Scholter v. Barnhart,* 2004 WL 1932776, at *7 n.7 (D.Mass. Aug.16, 2004). However, "if the disabilities of the hypothetical claimant would not *in and of themselves* prevent him or her from traveling by some normally available means of transportation, either public or private, to ' work which exists in the national economy,' he will not be deemed disabled on incapacity to travel grounds." *Id*. (emphasis added). This inquiry focuses on a hypothetical claimant in the United States, not the actual plaintiff. *Id.* Plaintiff's transportation by bicycle tyo does not fall within the exception and the ALJ was not required to adopt the testimony with the additional restrictions

RFC Assessment

In a one sentence argument, Plaintiff contends that the ALJ's RFC assessment was not supported by substantial evidence as a result of the two errors discussed above, i.e., failure to properly find that the Plaintiff's mental impairments meet or equal a listing impairment and failure to properly respond to additional limitations Plaintiff's counsel placed on the ALJ's hypotheticals. Because those two arguments lack merit, this argument also fails.

*Conclusion*

For the foregoing reasons, the Motion for an Order Affirming the Decision of the Commissioner (Docket No. 12) is **granted**.

/s/ Timothy S. Hillman_____
TIMOTHY S. HILLMAN
U.S. MAGISTRATE JUDGE